April 17, 1911.

———o———

5285.

(Court of Appeal, Parish of Orleans.)

## SUCCESSION OF MRS. MARGARET BLANKS, WIDOW OF J. G. GILMORE.

1. Where the will gives to an heir at law only what the law itself would give in the absence of a will, this is not such a legacy as will debar him from claiming a commission as executor under the will.
2. A bequest of an object of no pecuniary value, and having a sentimental value only, is not such a legacy as will debar an executor from receiving a commission for his services. The legacy to have that effect must bear some appreciable proportion to the commission which would have been earned.
3. Where the heirs have themselves rendered the services of the attorney for the succession more arduous than they otherwise would have been, his fees will be increased accordingly.

Appeal from the Civil District Court, Division "A."

R. H. Browne, O. S. Livaudais, Jas. Wilkinson, for plaintiff and appellee.

Chas. Rosen, for appellant.

ST. PAUL, J.—From a judgment allowing a fee of $500 to the attorney of this succession, and a commission of 2½% to the executor, one of the heirs appeals. The attorney has answered the appeal praying for an increase.

There are but two questions involved; one is whether an executor is entitled to a commission, when he is an heir-at-law and the will gives him only what the law itself would give him in the absence of a will; the other is the amount of the fee to which the attorney is entitled.

## I.

We think that where an heir at law is given by the will only that which the law itself would give him in the absence of a will, there is no legacy, properly speaking, but a mere confirmation of the legal inheritance. Succession of Moore, 40 An. .... Under such circumstances he is entitled to a commission. We think that the legacies by Article Civil Code 1686, are such as are pure gratuities and hence to be looked upon as quasi compensatory of the services to be rendered, not such legacies as evidence nothing more than an institution on the part of the testator to have his estate divided according to law. For instance, had this testatrix, after making her special legacies, merely appointed her son executor and said nothing else, her estate would have been divided just as it is now, but there can be no doubt that the executor would then have been entitled to his commission. We do not see that it is any reason for denying him that commission that the testatrix has done exactly what the law would have done for her, had she not done it herself. Nor do we think that the above mentioned article so intended.

Nor yet do we think that a disposition, by which the testatrix directs that the portrait of her husband, the father of her children shall be drawn for by lot by her three sons (the daughter already having such a portrait), can be considered a legacy in any sense of the word; nor even the gift of the portrait itself to the executor. Its value is purely sentimental, like that of a lock of hair, or trinket or family heirloom, prized for the association which surrounded it, and not for any intrinsic value it may have. The pecuniary value of the gift or legacy should bear some appreciable proportion to the commission which would be earned. For the presumption is that the law allows a commission to the executor for services rendered and not as a mere gratuity. It denies him a commission when he receives a legacy only in the theory that the testator intended the legacy as a compensation for the services, which the executor is not presumed to render gratuitously.

The Supreme Court has shown a disposition to take a liberal view of such matters. Commissions have been allowed to an executrix even where she had received a legacy largely in excess of the legal commission.

See **Succession of Filhiol, 123 La. 498.**

We think the policy a proper one, and are disposed to follow it. The heirs lose nothing thereby since the executor is free to decline the trust (Civil Code 1667) without forfeiting his legacy, or at any rate his inheritance, and in that case a new executor would have to be named to whom a commission would be due.

We think the commission was properly allowed.

## II.

The fees of the attorney for the succession were fixed by the district judge at the sum of $500, in full for all services. He has asked an increase to $1400. We have

gone carefully through the record and think that $500 will not compensate the attorney for all his services.

The estate was a considerable one but might have been settled in a short time, with little trouble, and the attorney had offered to do this for a very moderate fee. But the heirs themselves made this impossible, and warned the executor that if he did not yeild to their views on the subject of employing counsel, they would give him all the trouble he might wish for. And they did so.

Over two years elapsed from the opening of the succession to the closing thereof, although a few days would have sufficed but for their obstructions.

The executor had to qualify, inventories had to be taken, an attorney for an absent legatee had to be appointed. A frivolous suit was filed to annul the codicil to the will, and had to be defended. Legatees had to take rules to obtain possession of the things bequeathed to them, which the heirs had in their possession and would not deliver. Creditors whose claims were not disputed had to take rules to obtain payment. The heirs held possession of the personal effects and refused to deliver them to the executor except upon their own terms and after long persuasion. Thirty-five letters did the attorney write up to the filing of the account; how many he received does not appear. Agreements were attempted and reached between counsel, which had to be cancelled because the heirs repudiated them. There were other features which need not be mentioned but which made the task of the attorney much more difficult than should have been. There was even an attempt to reopen the succession of the father, long since closed, which had to be opposed, and was abandoned only at the moment of going to trial.

Finally after the lapse of a year it became possible to

file a provisional account. This was opposed imme-diately as to each and every item, and for nearly a year the whole account was held in abeyance. When at last a trial was reached, every opposition was withdrawn, except as to the two items first mentioned, without any proof being required, some matters being reserved for settlement at the partition.

Meanwhile fifteen more letters had to be written by the attorney who was still making vain efforts to effect some settlement or make some progress. Finally, however, the parties agreed to a putting in possession, and a clos-ing of the estate, but this was nearly a year after the filing of the account and over two years after the open-ing of the succession. Up to that time even the inheri-tance tax had not been paid although more than eighteen months overdue.

There were also services rendered in looking out for the estate generally, partly in other litigation, also in a settlement of some partnership affairs, and in connec-tion with out of town properties. The value of the es-tate was above $22,000.

The attorney put himself on the account (a provi-sional one) for $500 up to date. We think his valua-tion of his services up to that time quite modest; but we cannot go behind that account even if disposed to do so.

As to his service rendered since the filing of the ac-count, and extending over a whole year, we find that they consisted of writing letters, making attempts at a settlement, endeavoring to bring the opposition to trial, attending to the rules of creditors asking to be paid and obtaining orders for that purpose, defending the account or preparing to do so, and putting the heirs in possession.

We think these services are reasonably worth an ad-

ditional sum of $200; that the allowance of $500 should be increased to $700, which we think a fair fee for all services. As thus amended the judgment should be affirmed.

It is, therefore ordered, adjudged and decreed that the judgment herein appealed from be amended by increasing the amount allowed the attorney for the succession from $500 to seven hundred dollars, ($700), and that as thus amended said judgment be affirmed at the cost of the appellant.

April 17, 1911.

Rehearing refused, May 15, 1911.

Writ denied by Supreme Court, June 20, 1911.